# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER TSADILAS, <br><br> Plaintiff, <br><br> -against- <br><br> NASSAU COUNTY SPCA DETECTIVE MATTHEW ROPER, <br><br> Defendant. | **COMPLAINT** <br><br> Docket: 21-cv-2765 <br><br><br> JURY TRIAL DEMANDED |

The Plaintiff, Peter Tsadilas, complaining of the defendant through his attorneys at Barket Epstein Kearon Aldea & LoTurco, LLP, respectfully shows to this Court and alleges that he was deprived of his civil rights and sustained injury as a result of this deprivation.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the claims in this action arise under 42 U.S.C. § 1983.

2.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose, and in which the Defendants resided or conducted business.

## PARTIES

3.      Plaintiff, Peter Tsadilas, is a resident of Nassau County, New York, and was the victim of a malicious prosecution, false arrest and abuse of process forming the basis of this action.

4.      Defendant Matthew Roper was at all relevant times an agent of Nassau County's Society for the Prevention of Cruelty to Animals (the "SPCA"), working with its assent, for its benefit and under its control, and was acting under color of state law. He is sued in his individual capacity.

5.      The SPCA is a state actor specifically designated and authorized by New York State to operate as peace officers, to enforce certain laws, and to effectuate certain arrests related to the treatment of animals on behalf of the State. *See, e.g.,* Agriculture and Markets Law §371.

## FACTS

6.      Peter Tsadilas is a father, restaurant-owner, and dog-lover.

7.      On June 26, 2018, Mr. Tsadilas's family owned two dogs—a small shih tzu named Polo and a golden Labrador named Callie.

8.      On or about June 26, 2018, Mr. Tsadilas let Polo and Callie out of the house to go to the bathroom—something he had done many times in the past.

9.      Minutes later, Mr. Tsadilas looked outside and could not see Callie.

10.     Mr. Tsadilas went outside and could not find Callie.

11.     Mr. Tsadilas began looking for Callie around his neighborhood.

12.     During his search, Mr. Tsadilas flagged down a police officer from Oyster Bay Cove for help.

13.     In the early morning hours of June 27, 2018, a good Samaritan found Callie outside in the rain.

14.     The good Samaritan took Callie home with her and kept her outside for approximately five more hours, waiting for the local animal shelter to open.

15.     At approximately 10:00am on June 27, 2018, the good Samaritan took Callie to the animal shelter in Oyster Bay (the "Shelter").

16.     Mr. Tsadilas had had a chip installed from the American Kennel Club that helps track down dogs when they go missing.

17.     Upon using the chip, Mr. Tsadilas communicated with the Shelter looking for his dog and seeking its return to him.

18.     While Callie was in the Shelter's custody, she was observed by a veterinarian, Dr. Tundo, and on June 29, 2018 a tumor was identified in Callie's stomach.

19.     In addition to a series of conditions that Callie could have sustained by virtue of being outside in the rain and elements, and an ear condition that had afflicted Callie for years as documented explicitly in her veterinary records, Dr. Tundo noted that Callie appeared to be underweight.

20.     Dr. Tundo recommended a biopsy and for the tumor to be removed with dispatch.

21.     By July 2, 2018, the tumor had not been removed.

22.     On July 2, 2018, Mr. Tsadilas received a phone call from the Defendant (the "July 2 Call").

23.     Mr. Tsadilas and the Defendant had spoken to each other in the past.

24.     The Defendant also knew of Mr. Tsadilas through one of his cousins, A.D. (the "Cousin"), who had gone to high school and developed an acrimonious relationship with Mr. Tsadilas.

25.     On the July 2 Call, the Defendant gave Mr. Tsadilas a choice: he could either assign ownership of Callie over to Nassau County, or he could be arrested and prosecuted for animal cruelty.

26.     On the July 2 Call, Mr. Tsadilas told the Defendant to "go f--- yourself," informing the Defendant that Callie belonged to his daughter, that he had had the dog for seven years, and that he would not give it away.

27.     The following morning, July 3, 2018, the Defendant arrived at Mr. Tsadilas's home at approximately 8:00am.

28.     After Mr. Tsadilas opened the door for the Defendant, the Defendant stated in sum and substance, "F--- me?  F--- you, motherf----er.  You're under arrest."

29.     Defendant arrested Mr. Tsadilas in his underwear, and he was only given pants because of the assistance of a separate officer on the scene.

30.     The Defendant put Mr. Tsadilas into the back of a black SUV.

31.     The Defendant did not gather Polo, who was in the home and showed no signs of distress.

32.     The Defendant told Mr. Tsadilas, in sum and substance, that he was hoping that Mr. Tsadilas would not be home and that he would instead have been at the diner he owned, because he wanted to "embarrass you in front of all your customers."

33.     Mr. Tsadilas complained of how tight the handcuffs were, and the Defendant went into the back seat and made the cuffs even tighter.

34.     The Defendant told Mr. Tsadilas that because he was Greek, he would "love where [he was] going"—implying that Mr. Tsadilas was homosexual because of his nationality and that he was going to get raped in prison.

35.     The Defendant called Mr. Tsadilas a "Greek n--ger."

36.     Mr. Tsadilas began to cry in the back seat of the SUV, pleading that he had done nothing wrong and inquiring why this was being done to him.

37.     The Defendant said, because "I don't like you."

38.     The Defendant told Mr. Tsadilas in sum and substance, "I don't want to take you to jail. I want to take you sailing with [the Cousin] and beat the living s--t out of you and throw you overboard."

39.     Eventually, the Defendant and Mr. Tsadilas arrived in the black SUV at their destination, where Mr. Tsadilas was taken to a cell.

40.     After being processed, the Defendant told Mr. Tsadilas in sum and substance that he was going to allow him out of the unit through a back door to "avoid all the press." He then led Mr. Tsadilas through a door where several press members were waiting to snap Mr. Tsadilas's picture.

41.     Mr. Tsadilas was arraigned on July 3, 2018.

42.     Mr. Tsadilas was charged with violating section 353 of the Agriculture and Markets Law—to wit, overdriving, torturing, and injuring animals; failure to provide proper sustenance."

43.     On or about August 24, 2018, the shelter returned Callie to Mr. Tsadilas's ex-wife, Christine Dickovitch.

44.     The tumor had still not been removed from Callie's stomach by anyone working at or for Nassau County.

45.     The Defendant did not notify Ms. Dickovitz of the tumor at all.

46.     On August 27, 2018, the Defendant communicated with a Nassau County assistant district attorney ("ADA") about the case.

47.     During the August 27, 2018 communication with the ADA, the ADA told the Defendant to "let Christine know that the dog license is about to expire." In response, the Defendant expressed a preference for leveraging the impending expiration into prejudicial information in court, stating: "Do you want me to do that[?] That's a misdemeanor arrest in New

York and … if they [are] loving parents they should know this[.] Might be good to bring up in court."

48.    Mr. Tsadilas's ex-wife brought Callie to a veterinarian who, on October 8, 2018, performed emergency surgery.

49.    On October 8, 2018, an ovarian mass was removed from Callie's stomach that weighed more than six pounds (the "Six Pound Mass").

50.    Once the Six Pound Mass was removed from Callie's stomach, her health began rapidly improving.

51.    Nevertheless, Defendant Roper urged the ADA to continue prosecuting the case against Mr. Tsadilas.

52.    Defendant Roper visited the veterinarian who removed the Six Pound Mass and reprimanded her.

53.    Ultimately, no charges were dropped against Mr. Tsadilas despite the absence of probable cause that he had committed any crime at all, let alone a violation of Section 353 of the Agriculture and Markets Law.

54.    On September 16, 2019, Mr. Tsadilas was acquitted by a jury after trial.

## CAUSE OF ACTION

## FIRST CAUSE OF ACTION

## MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983

55.    Plaintiff reasserts all of the above-stated allegations as if set forth more fully again herein.

56.    The Defendant was at all times acting under color of state law and in the scope of his employment.

57.     The Defendant initiated criminal proceedings against the Plaintiff in Nassau County, where he was charged with violating Section 353 of the Agriculture and Markets Law.

58.     The Defendant advised and encouraged the ADA to prosecute the Plaintiff.

59.     The Defendant signed the accusatory instrument against the Plaintiff.

60.     The criminal charges against the Plaintiff were terminated in his favor as the sole charge resulted in a 'not guilty' verdict after trial.

61.     Plaintiff's liberty was restrained post-arraignment, including by having to return to criminal court repeatedly pre-trial and at trial from July 2018 to September 2019, and during the entire period of time from his arraignment to the dismissal of charges had to render himself amenable to the orders and processes of the Court.

62.     There was no probable cause to prosecute the Plaintiff at the time of his arrest or arraignment, and, to the contrary, readily available evidence demonstrated a high level of care that Plaintiff offered to Callie—including but not limited to veterinarian records showing proper attention to her medical conditions; a chip installed in Callie pursuant to protocols set by the American Kennel Club; records of at least one prior meeting between Mr. Tsadilas and the SPCA itself, at which Callie was deemed by a detective to be "alert, good weight, and happy;" observable evidence of the health of Mr. Tsadilas's other dog, Polo, about whom there were no allegations of malnourishment; a known and innocent explanation for Callie's appearance at the shelter— namely, that she had gone missing and been in the rain and elements overnight; Mr. Tsadilas's own unwillingness to assign Callie over to Nassau County—despite express warnings that his failure to do so would come at great risk of criminal prosecution; and scans detecting a large but unknown tumor in Callie's stomach—a tumor that was not investigated or removed despite Dr. Tundo's recommendation.

63.     If there had been probable cause at the time of Plaintiff's arrest or arraignment, which there was not, it had dissipated in and around October 8, 2018, when the Six Pound Mass was discovered and removed, leading to Callie's rapid recovery.

64.     Plaintiff is entitled to compensatory and punitive damages to be decided by a jury.

65.     Plaintiff is entitled to attorneys' fees under 42 U.S.C. Section 1988(b).

## SECOND CAUSE OF ACTION

## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. §1983

66.     Plaintiff reasserts all of the above-stated allegations as if set forth more fully again herein.

67.     The Defendant employed regularly issued legal (criminal) process when he arrested and initiated the prosecution of Mr. Tsadilas.

68.     The Defendant intended to cause Mr. Tsadilas harm without excuse or justification, a fact corroborated by the epithets he used against the Plaintiff; his pre-existing animosity toward Mr. Tsadilas based upon his prior meetings with him and knowledge of Plaintiff's history with the Defendant's cousin; the admission that he wanted to take Mr. Tsadilas out on a boat with the Coustin and throw him overboard; his immediate release of the details of Mr. Tsadilas's arrest to the media; his admission that he would have preferred to arrest Mr. Tsadilas at his diner in order to embarrass him in front of his customers; his pursuit of this arrest and charges without investigating readily available exculpatory information; his pursuit of charges despite the absence of probable cause; his offering to not press charges if Mr. Tsadilas agreed to assign Callie away from his family; his continuation of process despite intervening events, i.e. the removal of the Six Pound Mass, that otherwise further corroborated Plaintiff's innocence; and other facts and information.

69.     The Defendant perverted the criminal process to obtain a collateral objective different from seeing the ends of justice done—namely, to gratify his own ego; to obtain vengeance against Mr. Tsadilas for telling him to "go f--- [himself];" and to settle scores for his cousin, with whom Mr. Tsadilas had had an acrimonious relationship many years in the past.

70.     Plaintiff is entitled to compensatory and punitive damages to be decided by a jury.

71.     Plaintiff is entitled to attorneys' fees under 42 U.S.C. Section 1988(b).

### THIRD CAUSE OF ACTION

### FALSE ARREST UNDER 42 U.S.C. §1983

72.     Plaintiff reiterates and reasserts all prior allegations in this Complaint as if set forth more fully again herein.

73.     The Defendant was at all times acting under color of state law and in the scope of his employment.

74.     The Defendant intended to arrest Plaintiff and caused him to be confined.

75.     The Plaintiff was aware of his confinement and did not consent to it.

76.     The arrest and confinement of the Plaintiff was not supported by probable cause, and, to the contrary, readily available evidence demonstrated a high level of care that Plaintiff offered to Callie—including but not limited to veterinarian records showing proper attention to her medical conditions; a chip installed in Callie pursuant to protocols set by the American Kennel Club; records of at least one prior meeting between Mr. Tsadilas and the SPCA itself, at which Callie was deemed by a detective to be "alert, good weight, and happy;" observable evidence of the health of Mr. Tsadilas's other dog, Polo, about whom there were no allegations of malnourishment; a known and innocent explanation for Callie's appearance at the shelter—namely, that she had gone missing and been in the rain and elements overnight; Mr. Tsadilas's

own unwillingness to assign Callie over to Nassau County—despite express warnings that his failure to do so would come at great risk of criminal prosecution; and scans detecting a large but unknown tumor in Callie's stomach—a tumor that was not investigated or removed despite Dr. Tundo's recommendation.

77.     The arrest and confinement of the Plaintiff was not otherwise privileged.

## DAMAGES

78.     As a consequence of the Defendant's conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, damage to his reputation, lost earnings at his diner, attorneys' fees, and other pecuniary damages.

79.     Once news of Mr. Tsadilas's arrest hit the news, people began protesting and vandalizing Mr. Tsadilas's diner—including by, among other things, throwing feces on its walls.

80.     Due to Defendant's conduct, Mr. Tsadilas was known around his community as an animal torturer.

81.     The Defendant should be held liable not only to compensate Plaintiff for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

82.     The Defendant should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

**WHEREFORE**, Plaintiff prays for relief as follows:

A.     That the Court award compensatory damages to Plaintiff and against the Defendant, in an amount to be determined at trial;

B.     That the Court award punitive damages to Plaintiff, and against the Defendant, in an amount to be determined at trial that will deter such conduct by police officers in the future;

C.     That the Court award attorney's fees pursuant to 42 U.S.C. § 1988(b);

      D.     For a trial by jury; and

      E.     For any and all other relief to which they may be entitled.

Dated: Garden City, New York
       May 17, 2021

                             **BARKET EPSTEIN KEARON ALDEA**
                             **& LOTURCO, LLP**

By:         _____

                             Alexander Klein, Esq.
                             666 Old County Road, Suite 700
                             Garden City, N.Y.  11530
                             (516) 745-1500

Case 2:21-cv-02765-GRB-ST   Document 1-1   Filed 05/17/21   Page 1 of 2 PageID #: 12

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| PETER TSADILAS<br><br>_____<br>_Plaintiff(s)_<br><br>v.<br><br>NASSAU COUNTY SPCA DETECTIVE MATTHEW<br>ROPER<br><br>_____<br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.  21-cv-2765<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  NASSAU COUNTY SPCA
DETECTIVE MATTHEW ROPER
510 Grumman Rd W
Bethpage, NY 11714

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Alexander R. Klein, Esq.
Barket Epstein Kearon Aldea & LoTurco, LLP
666 Old County Road, Suite 700
Garden City, NY 11530
(516) 745-1500

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
_CLERK OF COURT_

Date:  _____                     _____
                                                                       _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.  21-cv-2765

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                 *Server's signature*

                                           _____
                                                 *Printed name and title*


                                           _____
                                                 *Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 02/19)                                          **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Peter Tsadilas | Nassau County SPCA Detective Matthew Roper |

| (b) County of Residence of First Listed Plaintiff    Nassau | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Alexander Klein, Esq. - Barket Epstein Kearon Aldea & LoTurco, LLP 666 Old County Road, Suite 700, Garden City, NY 11530 (516) 745-1500 | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question *(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 340 Marine | | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V.  ORIGIN** *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Malicious Prosecution, Malicious Abuse of Process, False Arrest

**VII.  REQUESTED IN COMPLAINT:**

☐  CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII.  RELATED CASE(S) IF ANY**

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
05/17/2021

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

Case 2:21-cv-02765-GRB-ST   Document 1-1   Filed 05/17/21   Page 2 of 2 PageID #: 15

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration [  ]

I, Alexander Klein_____, counsel for Peter Tsadilas_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

[✓]  monetary damages sought are in excess of $150,000, exclusive of interest and costs,

[  ]  the complaint seeks injunctive relief,

[  ]  the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?     [ ] Yes   [✓] No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?     [✓] Yes   [ ] No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?     [✓] Yes   [ ] No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____ [ ] Yes   [ ] No_____
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

[✓]  Yes                    [ ]  No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

[ ]  Yes  (If yes, please explain        [✓]  No

I certify the accuracy of all information provided above